# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | | |
|---|---|---|
| **MICHAEL DERRICK EDWARDS,** | ) | CASE NO. 7:19CV00324 |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **BARRY KANODE, ET AL.,** | ) | By: Glen E. Conrad |
| | ) | Senior United States District Judge |
| **Defendants.** | ) | |

Michael Derrick Edwards, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that prison officials violated his constitutional rights in various ways, including use of excessive force and denial of adequate medical care. In this memorandum opinion, the court will review the partial motion to dismiss, ECF No. 79, filed by one group of defendants ("nonmedical defendants"), and Edwards' response thereto. After review of the record, the court concludes that this motion must be granted in part and denied in part.

## I. Background.

The story underlying Edwards' § 1983 claims began when he was confined at River North Correctional Center ("River North"). On November 27, 2018, around 3:00 p.m., Sergeant A. Murray came into the C-2 Pod to hand Edwards some legal cases from the law library. Murray "threatened [him] about [a] previous lawsuit he filed," told him he would not "be on the compound long," and said, "You the one that like[s] to file lawsuits, I got something for you."[1] Second Am. Compl. ("Compl.") 3, ECF No. 126.

During chow time that afternoon, Edwards saw Murray talking to Sergeant ("Sgt.") M. D. Dean. Later, Dean stopped Edwards and took his coat, but did not pat him down. Dean asked

---

[1] The summary of Edwards' allegations is stated as true here for purposes of reviewing the defendants' partial motion to dismiss and does not constitute any finding of fact.

him repeatedly if he had threatened to kill Murray. Each time, Edwards answered, "No." Id. at 4. Sergeant Jackson came over to talk to Murray nearby, who told him that Edwards "is the one that like[s] to file lawsuits." Id. Jackson said, "He writes sh** up too." Id.

At this point, an officer told Edwards to stand by the fence. Dean threatened him that if he took his arms down, Dean "would put [him] on the fence." Id. Edwards took down his arms, and Dean pushed him, face first, against the fence. Edwards turned around and punched Dean in the face. Dean swung a punch at Edwards, but missed. Edwards punched Dean twice more, and when Dean fell, Edwards "then laid down on his stomach in a surrendering position." Id. Murray and Jackson "held him down [and] allowed Sgt. Dean to repeatedly punch [him] in the face calling him a 'stupid ni****.'" Id. Canine officer J. D. Ayers then told all three officers to "watch out let the dog get him allowing the dog to bite [Edwards] while he was still laying on his stomach in surrendering position." Id. Still on the ground, Edwards "had to fight the dog off him." Id. Then, he "got up and ran to the other side of the fence and laid down on his stomach surrendering." Id. At that point, canine officer Garcia "allowed his canine to bite [Edwards] on the back." Id.

While Edwards was being placed in restraints, he was "assaulted by Officers Robinson, Halsey, Acord, Griffin, Dunning and Bilbrey with knees and punches to the face." Id. at 5. Edwards "was then picked up and rammed headfirst into [a] gate post, outside medical and inside medical doors and medical exam bed by Acord, Griffin, Robinson, Mallory, and Adkins. [He] was then tossed on the floor and assaulted with knees and punches to the face by defendants Acord, Griffin, Robinson, Mallory and Adkins." Id. While Edwards was sitting on the exam bed being examined by nurses, Robinson and Adkins "tightened the cuffs on [his] hands and wrists making them dig into his skin and continued to squeeze and bend [his] hands back leaving

2

them bleeding and swollen." Id. Jackson cut Edwards' clothes off, leaving him nude. Edwards "had passed out," and when he "came to Robinson and Adkins continued to bend his hands behind his back. [He] had never resisted or needed to be restrained at any point." Id.

Then, by order of Captain Blevins, officers strapped Edwards down, nude, in five-point restraints in a medical observation cell. Nurse Payne approved the restraints, despite an open wound from the dog bite on Edwards' back. Around 5:20 p.m., Assistant Warden White and Blevins came and questioned Edwards about what had happened. They said they had reviewed surveillance camera footage of the incident and asked Edwards why he had not kept his hands on the fence as Dean had ordered him to do. These officials allowed Edwards to be held in five-point restraints as punishment for assaulting an officer.

Around 6:30 p.m., T. Musick and J. Murray came into the cell with a camcorder and asked Edwards if he wanted to come off five-point restraints, and Edwards said he did. Musick said on camera that Edwards had refused. Musick then said, "I don't know why you think you coming off restraints after assaulting a staff member." Id. at 6. Musick later tightened the straps on Edwards' arms, chest, and legs and refused his request to be released to use the bathroom. Around 12:00 a.m., Edwards again asked to use the bathroom and was told to urinate on the floor. Instead, he urinated on himself. He was finally given a bathroom break at 3:00 a.m. and was then placed back into the restraints, nude, for the rest of the shift. Edwards did not show any disruptive or threatening behavior while confined in the five-point restraints for sixteen hours. Around 9:00 a.m. on November 28, 2018, Lieutenant Mallory and transportation officers came to transfer him to Red Onion State Prison ("Red Onion").

Edwards arrived at Red Onion around 12:30 p.m. "[T]he entire left side of his face and head was bruised, bloody, swollen, his left eye was completely swollen closed, [he] had a cut on

3

his right eyebrow, cuts, bruises and swelling to both hands and wrists, both lips busted and dog bites on right leg, thigh, and back." Id. at 7. Edwards alleges that he was given no medical treatment for weeks at Red Onion.

On November 28, 2018, Edwards was served with six disciplinary charges—for assaults against Garcia, Ayers, Robinson, and the two canines, and for aggravated assault against Dean. Edwards claims that he was denied due process with regard to the charges concerning Robinson, Dean, and the two canines. Defendant MacVean conducted a disciplinary hearing on December 14, 2018, via telephone.[2] MacVean showed "bias and prejudice" as a decision maker. Id. at 9. He denied all but one of Edwards' requested witnesses, and that one witness was not present for the hearing. MacVean also denied Edwards' requested documentary evidence and refused his request for review of the camera footage. MacVean found Edwards guilty on all the charges, based on the officers' testimony, although Edwards does not find their stories to be "plausible." Id. The officers' incident reports, prepared before the disciplinary charges, described the encounter between Dean and Edwards as only a simple assault, but Dean "falsely" wrote the charge as aggravated assault. Id.

Warden Kanode upheld the guilty findings without correcting the due process violations that Edwards identified to him. "As a result of the disciplinary convictions," Edwards was reclassified to Security Level S, Intensive Management ("IM") pathway, designating him as an inmate who needed to be managed indefinitely in long-term segregated confinement. Id. at 10.

Edwards asked for a VDOC investigation of the November 27, 2018, incident—Dean's initiating a conflict with Edwards by pushing him into the fence, punching him in the face, and using a racial slur and the other officers' beating of Edwards while he was already restrained.

---

[2] Although the parties in this case identify this defendant as Macvean, the court takes judicial notice that his name is properly spelled MacVean, as indicated in exhibits filed in Edwards' other civil action, Case No. 7:19CV00188. See Mot. Suppl. Rec. MacVean Aff. Encl. B, at 48, ECF No. 41-1.

On December 20, 2018, Investigator Lawson interviewed Edwards, who explained his belief that Dean attacked him as part of a plan between Dean and Murray to retaliate against Edwards for his prior lawsuits and grievances. Lawson told Edwards that Agent Acosta would lead the investigation. Edwards received copies of the investigation report in September 2019. He complains that Acosta only interviewed three officers (Dean, Garcia, and Ayers) and reviewed camera footage which he said did not contain any clear images of the incident. Edwards faults Acosta for failing to interview other inmates or officers and for adopting the participant officers' "false" characterization of Edwards' actions against Dean as an aggravated assault. Edwards also asserts that the investigation should have been completed before the disciplinary charges issued against him. Edwards contends that the failure of Lawson and Acosta to conduct a proper and timely investigation constituted "abuse of process" and a violation of his constitutional rights that left him in long-term segregation at Level S, IM status, with no way of appealing that classification. He complains that living conditions in IM status are isolating and harsh. <u>Id.</u> at 11.

Liberally construed, Edwards' complaint now before the court alleges the following grounds for relief:

1. Dean, A. Murray, and Jackson retaliated against Edwards for filing a prior lawsuit by using excessive force against him.

2. Dean, A. Murray, Jackson, Ayers, Garcia, Robinson, Halsey, Acord, Griffin, Dunning, Bilbrey, Mallory, and Adkins used excessive force against Edwards.

3. Dean, A. Murray, Jackson, Ayers, Garcia, Robinson, Halsey, Acord, Griffin, Dunning, Bilbrey, Mallory, and Adkins committed the state law tort of assault and battery against Edwards.

4. Blevins, White, Musick, and J. Murray punished Edwards for assaulting officers by placing him in five-point restraints and holding him in such restraints for sixteen hours without sufficient breaks, when he did not pose any threat, in violation of the Eighth Amendment, and denied him due process.

5. Nurse Payne denied Edwards adequate medical care when he was placed in five-point restraints at River North.

6. D. Ball and B. Witt denied Edwards adequate medical care for several months after his arrival at Red Onion.

7. MacVean, Dean, and Kanode violated Edwards' due process rights during the disciplinary hearings and appeals therefrom.

8. Lawson and Acosta conducted a substandard investigation, thereby violating Edwards' rights under the Eighth Amendment and the Due Process Clause and committing an abuse of process and nonperformance of job duties in violation of unidentified state laws.[3]

Edwards seeks declaratory, injunctive, and monetary relief against the defendants. The partial motion to dismiss currently under review addresses only claims 1, 4, 7, and 8.[4] Edwards has responded to the defendants' contentions, in part by filing his current complaint. The court concludes that the motion is ripe for disposition.[5]

II. Discussion.

A district court should dismiss a complaint under Rule 12(b)(6) if, accepting all well-pleaded allegations in the complaint as true and drawing all reasonable factual inferences in the plaintiff's favor, the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "[A] plaintiff's

---

[3] Edwards also asserts that the defendants "violated his First Amendment right to file grievances." Compl. 13, ECF No. 126. This contention, however, fails to state any deprivation of constitutional rights actionable under § 1983. Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017) ("[I]nmates have no constitutional entitlement or due process interest in access to a grievance procedure. An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process.").

[4] The defendants bringing this motion are Kanode, White, Dean, A. Murray, Jackson, Ayers, Garcia, Robinson, MacVean, Acosta, Lawson, Blevins, J. Murray, Halsey, Acord, Griffin, Dunning, Bilbrey, and Mallory. A prior motion to dismiss by some of these defendants, ECF No. 35, will be dismissed as superseded by their current motion. By separate order, the court has directed service of the current complaint on defendant Adkins.

[5] Two other defendants who are medical professionals, D. Ball and B. Witt, are represented by separate counsel. They have filed a motion for summary judgment in response to Edwards' medical claims, which will be addressed in a separate memorandum opinion and order. Their previously filed motions to dismiss will be dismissed as superseded by their pending summary judgment motion.

obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.[6]  "A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erikson v. Pardus, 551 U.S. 89, 93 (2007).

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). The court must grant the motion to dismiss as to Edwards' claims for damages against the defendants in their official capacities. Neither a state nor its officials acting in their official capacities are persons for purposes of § 1983. Will v. Mich. Dep't of State Pol., 491 U.S. 58 (1989).

The court also concludes that Edwards has failed to allege facts stating any § 1983 claim of retaliation. To state such a retaliation claim, a plaintiff must allege that (1) he engaged in a protected First Amendment activity, (2) the defendant took some action that adversely affected or chilled his exercise of his constitutional right, and (3) there was a causal relationship between his First Amendment activity and the defendant's conduct. See Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017). "The causation requirement is rigorous; it is not enough that the protected expression played a role or was a motivating factor in the retaliation; claimant must show that 'but for' the protected expression the [government official] would not have taken the alleged retaliatory action." Tobey v. Jones, 706 F.3d 379, 390 (4th Cir. 2013).

---

[6] The court has omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

Edwards contends that A. Murray and Jackson expressed frustration about his prior lawsuits and grievances, A. Murray and Dean manufactured an accusation that Edwards had threatened to kill A. Murray, and they all retaliated against him by participating in the ensuing use of excessive force. While Edwards has alleged his exercise of a protected right (his filing of lawsuits and grievances), see Booker v. S.C. Dep't of Corr., 855 F.3d 533, 542-45 (4th Cir. 2017), and an adverse action (the accusation and the use of force), his retaliation claim fails on the causation prong of the standard. To connect the defendants' adverse actions to his filing of lawsuits and grievances, Edwards offers, at the most, the close timing of events and his own self-serving and factually unsupported statement: "Upon information and belief A. Murray to[ld] Dean [that Edwards had] threatened to kill her in an effort to set him up for filing [a] lawsuit." Compl. at 3-4. Conclusory assertions of retaliation do not support a plausible § 1983 claim. The plaintiff must state sufficient facts to show a retaliatory motive behind the defendants' actions, and "[b]are assertions of retaliation do not establish a claim of constitutional dimensions." Garrett v. Angelone, 940 F. Supp. 933, 944 (W.D. Va. 1996). Moreover, Edwards cannot show that but for his filing of lawsuits and grievances, the officers would not have used force against him. Rather, Edwards' own actions—defying Dean's orders to keep his arms up on the fence and punching Dean repeatedly—were clearly the but for causes of the force used against Edwards that day. The court will grant the motion to dismiss as to claim 1, alleging retaliation.

The defendants next argue that Edwards fails to state claims of excessive force and assault and battery against Blevins and White for placing him in five-point restraints. In his current complaint, Edwards has withdrawn his assault and battery claims against these two defendants. Moreover, he has now more closely focused his constitutional claims against them, alleging that they wantonly punished him with long-term, five-point restraints, even after he was

no longer posing any threat, and thereby also deprived him of a liberty interest without intervening due process. The court concludes that the allegations against Blevins and White are sufficient to survive a motion to dismiss. See Williams v. Benjamin, 77 F.3d 756, 764, 769 (4th Cir. 1996) (finding that four-point restraints for eight hours without breaks when inmate poses no threat can constitute an Eighth Amendment violation and a procedural due process claim); Stevenson v. City of Seat Pleasant, 743 F.3d 411, 417 (4th Cir. 2014) (bystander liability may apply where defendant knew fellow officer was violating plaintiff's constitutional rights, "had a reasonable opportunity to prevent the harm, but "chose not to act"). The court will deny the motion to dismiss as to claim 4.

The defendants also argue that the court should dismiss Edwards' claims concerning the disciplinary proceedings, and the court agrees. "To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law." Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." Wilkinson v. Austin, 545 U.S. 209, 221 (2005). As a convicted prisoner, Edwards does not have an inherent, constitutionally protected liberty interest in avoiding more restrictive housing classifications. Id. at 221-22. A state-created liberty interest may exist, however, if Edwards can (a) "point to a Virginia law or policy providing him with an expectation of avoiding" a particular housing classification, Prieto, 780 F.3d at 252, and (b) show that the undesirable classification "impose[d] atypical and significant hardship . . . in relation to the ordinary incidents of prison life," Sandin v. Connor, 515 U.S. 472, 484 (1995), or "will inevitably affect the duration" of his confinement. Id. at 487. If the disciplinary penalty imposed on Edwards did not rise to the level

9

of a constitutionally protected liberty interest under Sandin, then he had no federal due process right to particular procedural protections before that penalty was imposed. Id.

Edwards' current complaint contends that he had a protected liberty interest in avoiding reclassification to Level S and its IM pathway and thus had federal due process rights during the disciplinary hearings that led to these adverse changes. While inmates assigned to these security level classifications are confined under restrictive conditions, the court takes judicial notice of their opportunity to participate in the VDOC's Segregation Step Down Program to reduce the restrictions imposed and earn back privileges. "This court has repeatedly found that an inmate's confinement at Red Onion under the Step-Down Program . . . is not atypical and significantly harsh as contemplated under Sandin." Smith v. Collins, No. 7:17CV00215, 2018 WL 4515898, at *6 (W.D. Va. Sept. 20, 2018) (citing many other cases); DePaola v. Virginia Dep't of Corr., No. 7:14CV00692, 2016 WL 5415903, at *10 (W.D. Va. Sept. 28, 2016), aff'd, DePaola v. Virginia Dep't of Corr., 703 F. App'x 205, 206 (4th Cir. 2017). "Indeed, the [Step Down] procedures themselves prevent confinement at Red Onion from falling into the category of indefinite isolation identified in Wilkinson . . . as triggering constitutional due process protections." Smith, 2018 WL 4515898, at *6. The court similarly finds here that Edwards' reclassification and transfer to Red Onion did not impose atypical conditions on him so as to create a protected liberty interest that entitled him to federal due process protections during the disciplinary hearings and appeals or during the classification proceedings.[7] Edwards also fails to provide evidence that the penalties imposed by MacVean for the disciplinary infractions deprived him of protected liberty interest. Indeed, he does not even state what those penalties were.

---

[7] For the same reasons, Dean's allegedly false characterization of Edwards' actions as an aggravated assault instead of a simple assault as described in the officers' incident reports did not deprive Edwards of any federal due process rights.

Moreover, Edwards does not state facts showing that any of the defendants named herein had any personal involvement in making the classification decisions that led to his transfer to Red Onion. To hold an official liable under § 1983, Edwards must state facts to affirmatively show that the officer acted personally to deprive him of, or violate his, constitutional rights. Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977). For the stated reasons, the court concludes that Edwards' complaint fails to state a plausible federal constitutional claim related to the disciplinary proceedings, reclassification, and transfer, and will grant the motion to dismiss as to claim 7.

Finally, the defendants argue that Edwards fails to state any § 1983 claim against Lawson and Acosta for their investigative efforts or alleged lack thereof. The court agrees. First, Edwards does not allege that Lawson participated in the investigation at all, except to interview Edwards himself and to tell him that Acosta would handle the other investigative duties. Accordingly, the complaint does not show how Lawson acted personally to deprive Edwards of any rights. Id. Second, Edwards fails to connect Acosta's investigation to his reclassification and transfer. As already discussed, Edwards had no protected liberty interest, and therefore, no constitutional right to federal due process protections, related to his disciplinary convictions, which allegedly led to his transfer to Red Onion and long-term segregation. Sandin, 515 U.S. at 484. Moreover, the investigation and its outcome were not part of the disciplinary appeals process or the security classification process.

Third, this court has rejected claims that the restrictive conditions and limited privileges imposed on Level S inmates are violative of Eighth Amendment protections against cruel and unusual living conditions. See, e.g., DePaola, 2016 WL 5415903, at *11. Edwards has not stated facts showing "significant physical or emotional harm, or a grave risk of such harm,"

11

arising from the challenged conditions in Level S status, as required to present a plausible Eighth Amendment claim regarding those conditions. Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). Fourth, Edwards simply has no constitutional right to have an investigation at all or to recover damages or any other form of relief because he believes investigators could have done more to reach the outcome he desired.

Finally, Edwards' purported state law claims against Lawson and Acosta are incomprehensible. He alleges that their "failure to perform their job duties, inaction, deliberate indifference, and abuse of process shows an act in the use of the process not proper in the regular course of the proceedings," in violation of some unspecified state law provisions, that allegedly caused Edwards to be reclassified to long-term segregation. Compl. 13, ECF No. 126. Thus, his complaint offers nothing more than "labels and conclusions," which are insufficient under Iqbal to state a plausible legal claim to relief.[8] 556 U.S. at 678. Based on the foregoing, the court will grant the motion to dismiss as to claim 8 in its entirety.

### III. Conclusion.

For the reasons discussed, the court will grant the nonmedical defendants' partial motion to dismiss as to claims 1, 7, and 8, and as to all claims against the following defendants who are not named in any of the remaining claims: MacVean, Kanode, Lawson, and Acosta. The court will deny the partial motion to dismiss as to claim 4.[9]

The court will require the remaining movant defendants (White, Dean, A. Murray, Jackson, Ayers, Garcia, Robinson, Blevins, J. Murray, Musick, Halsey, Acord, Griffin, Dunning,

---

[8] While the court must liberally construe Edwards' pro se pleading so that meritorious claims are not lost because of his lack of legal acumen, a pro se litigant must "allege facts that state a cause of action, and district courts are not required 'to conjure up questions never squarely presented to them.'" Considder v. Medicare, No. 3:09cv49, 2009 WL 9052195, at *1 (W.D. Va. Aug. 3, 2009) (quoting Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985)), aff'd, 373 F. App'x 341 (4th Cir. 2010)).

[9] The court recently ordered the clerk to attempt service of process on defendant Payne, who is named in claim 5, and as stated, other defendants have filed a motion for summary judgment regarding claim 6.

Bilbrey, and Mallory) to answer claims 2, 3, and 4 of the current complaint, which respectively allege excessive force, assault and battery, and use of five-point restraints as punishment and without due process. Finally, the court will require these defendants to file any motion for summary judgment as to claims 2, 3, and 4 within 30 days. An appropriate order will enter herewith.

The clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

**ENTER**: This 10th day of March, 2020.

/s/ Glen E. Conrad
Senior United States District Judge