IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **MICHAEL DERRICK EDWARDS,** | ) | |
| **Plaintiff,** | ) | **CASE NO. 7:19CV00324** |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **BARRY KANODE, ET AL.,** | ) | **By:  Hon. Glen E. Conrad** |
| **Defendants.** | ) | **Senior United States District Judge** |

In this civil rights action under 42 U.S.C. § 1983, the plaintiff, Michael Derrick Edwards, a Virginia Department of Corrections ("VDOC") inmate proceeding pro se, alleges that defendant Lisa Parks, a registered nurse ("RN"), acted with deliberate indifference to his serious medical needs after he was placed in five-point restraints.  The case is presently before the court on RN Parks' motion to dismiss on the ground of qualified immunity, her motion for summary judgment, and Edwards' responses thereto.  After review of the record, the court concludes that RN Parks' motion for summary judgment must be denied.

I. BACKGROUND

On November 27, 2018, at River North Correctional Center ("River North"), Edwards was involved in an altercation with prison officials, who used a patrol dog that bit Edwards in several places.  Officials then took Edwards to a medical surveillance cell and placed him into five-point restraints for sixteen hours—lying on a bed on his back with a restraint around each limb and his chest.  In his verified pleadings, Edwards states that RN Parks "approved of [his] being strapped down in 5-point restraint[s] knowing [he] had an open wound on his back from a dog bite."  Third Am. Compl. 6, ECF No. 164-1; see also Resp. 3, ECF No. 204.  Edwards contends that in so doing, RN Parks acted with deliberate indifference to his serious medical needs, in violation of his rights under the Eighth Amendment.  He seeks monetary damages and injunctive relief for therapy and other follow up medical care.

RN Parks offers her declaration and attached medical records in support of her motions.[1] The parties' facts are mostly undisputed, except where otherwise noted. Nurse Payne documented that on November 27, 2018, the altercation involving Edwards, corrections officials, and a patrol dog was reported at about 4:35 p.m.[2] Within minutes thereafter, Edwards was in the medical unit, and RN Parks was cleaning his injuries. See Mem. Supp. Mot. Summ. J. Ex. 1, Parks Aff. ¶ 10 and Attach. 12, ECF No. 187-1. Nurse Payne marked on an anatomical figure that Edwards had an abrasion on his posterior neck, two lacerations on the right side of his lower back, two puncture wounds at the top of his right posterior thigh, two puncture wounds with slight laceration on his right posterior forearm, three puncture wounds with slight laceration on the dorsum of his right hand, three puncture wounds to his right anterior calf, eleven puncture wounds on his right anterior thigh, a laceration above his right eyebrow, a round abrasion on the left side of his forehead, edema and an abrasion above his left lip, and a round abrasion on his left anterior shoulder.

Upon examination, Nurse Payne found that Edwards was alert and oriented times four, but there was edema to both sides of his face. She noted that Edwards denied chest pain, shortness of breath, or loss of consciousness, that he answered questions appropriately, and that he could tell the nurse where the canine contact had occurred. Nurse Payne's notes indicate that all of the injury sites were cleaned with Hibiclens and saline; Bacitracin ointment was applied to all of the abrasions; and a laceration near Edwards' right eye was sealed with Nu-skin and two steri-strips, per a verbal order from the facility physician, Dr. Stevens. None of Edwards' other wounds was sealed or bandaged. Nurse Payne also documented Dr. Stevens' order for the antibiotic

---

[1] The court notes that because NP Parks' motion to dismiss on the ground of qualified immunity relies on evidence outside the pleadings submitted with her summary judgment motion, the court finds it to be subsumed into the separate motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Moreover, because the court finds material facts in dispute, NP Parks' qualified immunity defense cannot be decided at this stage of the proceedings. See Willingham v. Crooke, 412 F.3d 553, 559 (4th Cir. 2005) (holding that genuine question of material fact as to reasonableness of official's action or inaction precluded summary judgment on qualified immunity).

[2] Nurse Payne is no longer a defendant in this action.

Augmentin, which was administered that evening and continued thereafter. Nurse Payne noted that Edwards could follow commands, had a full range of motion of all extremities, and ambulated with security officers to medical observation cell two, where he was housed per Dr. Stevens' order. Dr. Stevens also ordered nursing staff to take vital signs within two hours, at the beginning of each shift, and as needed; to perform a neurology check every four hours for twenty-four hours; and to provide a regular diet and current medications.

A security official, Captain Blevins, ordered his officers to place Edwards into five-point restraints, which they did at about 5:20 p.m. Video footage Edwards has obtained through discovery and presents as part of his case shows that this restraint process left him lying naked on his back on a padded, vinyl-topped table. Nurse Payne noted that when the security officers completed their tasks, as required by Virginia Department of Corrections procedure, the restraints were checked by an "RNCB as appropriate." Parks Aff. at ¶ 10. The applicable procedure states:

> Medical personnel must be advised when a decision is made to apply restraints within a cell and shall advise as to whether the offender has a condition that alters the general application of restraints. A nurse or other qualified medical person must examine the offender as soon as possible after restraints have been applied to ensure that circulation is adequate.

Operating Procedure ("OP") 420.2(VI)(D)(2)(c) (see Order 1, ECF No. 196).

RN Parks states that she was the "RNCB" who checked the placement of the restraints on Edwards that day—around each wrist, each ankle, and his chest. Parks Aff. at ¶ 11. RN Parks declares, "There were no contraindications for the restraints, and no restraints were placed over any of [Edwards'] wounds." Id. RN Parks states that as a medical department staff member at River North, she does not have authority to approve or disapprove the use of offender restraints of any kind. She declares that her role in the restraint process was merely to check that the restraints were safely applied to Edwards' limbs and chest, that she made this assigned check, and that she

found the restraints to be "properly placed" such that they "should not pose a threat to [Edwards'] health or safety." Id. at ¶ 23.

Edwards remained restrained throughout the night, with one brief release to use the toilet. At approximately 9:14 a.m., Dr. Stevens evaluated Edwards' injuries. Video footage of this examination indicates that the doctor had officers release Edwards from the chest and arm restraints to allow assessment of the dog bite injuries on his back. The doctor did not provide further treatment of the back injuries at that time. He documented that Edwards was stable, alert, oriented, and in no distress, but was complaining of headache and generalized body aches from being restrained. Edwards was thereafter released from the restraints and transferred to another prison facility.

## II. DISCUSSION

A court should grant summary judgment only when the pleadings and the record reveal that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); see, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A genuine dispute of fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In considering a motion for summary judgment, the court must view the facts and the reasonable inferences to be drawn from the facts in the light most favorable to the party opposing the motion. Id. at 255. "Because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," the court's inquiry on summary judgment must be "whether the evidence in this case presents a sufficient disagreement to require submission to a jury or whether

it is so one-sided that one party must prevail as a matter of law." McAirlaids, Inc. v. Kimberly-Clark Corp., 756 F.3d 307, 310 (4th Cir. 2014).[3]

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). An inmate's Eighth Amendment protections against cruel and unusual punishment include a right to the medical care necessary to address his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 103-04 (1976). Specifically, a prison official's "deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014).

The first, medical need portion of this legal standard is objective. It requires showing that the inmate's medical condition is, objectively, "serious—one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. A medical condition is "objectively serious when it would result in further significant injury or unnecessary and wanton infliction of pain if not treated." Formica v. Aylor, 739 F. App'x 745, 755 (4th Cir. 2018).

Taking Edwards' evidence in the light most favorable to him, the court concludes that he may be able to prove that the unbandaged dog bite wounds on his lower back qualified as objectively serious. The doctor ordered that they be cleaned with ointment and that Edwards receive an antibiotic medication immediately. It is also undisputed that these wounds were not bandaged.

The second, deliberate indifference portion of the Eighth Amendment standard is subjective. The plaintiff must show, by direct or circumstantial evidence, that the defendant,

---

[3] The court has omitted internal quotation marks, alterations, and/or citations here and throughout this memorandum opinion, unless otherwise noted.

subjectively, knew of and disregarded an excessive risk to inmate safety or health. Farmer v. Brennan, 511 U.S. 825, 837 (1994). The evidence must support findings that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and that she "also dr[e]w the inference." Id. While the inmate need not show the prison official "acted or omitted to act for the very purpose of causing harm or with knowledge that harm will result," the inmate must show "more than mere negligence." Id. at 835. Similarly, an inmate's mere disagreement with "questions of medical judgment" as to the appropriate course of treatment will not support a finding of deliberate indifference. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). An inmate has no "constitutional right to the treatment of his choice," so long as the medical treatment provided was "adequate to address the prisoner's serious medical need." De'lonta v. Johnson, 708 F.3d 520, 526 (4th Cir. 2013); Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977) (holding that essential test for constitutionally required medical care "is one of medical necessity and not simply that which may be considered merely desirable").

Drawing all reasonable inferences from the evidence in Edwards' favor, the court concludes that he may be able to show that RN Parks acted with deliberate indifference to a serious medical need in failing to object, for medical reasons, to the nature of Edwards' placement in restraints. Specifically, Edwards may be able to persuade a jury that RN Parks must have known from obvious facts that restraining Edwards, naked on the table with open wounds on his back, created an excessive risk of serious harm—both pain and the risk of infection—from exposure of the wound to the table's surface during the lengthy restraint period. The court also concludes that Edwards may be able to prove that, contrary to RN Parks' conclusory denial, she did have authority under OP 420.2(VI)(D)(2)(c) to protest, for medical reasons, the restraint of Edwards in this manner.

For the stated reasons, the court concludes that material issues of fact remain in dispute which preclude summary judgment for RN Parks. Therefore, the court will deny her motion for summary judgment and dismiss her motion to dismiss as subsumed by that motion. An appropriate order will be entered herewith.

The court will send a copy of this memorandum opinion and the accompanying order to plaintiff and counsel of record for the defendants.

**ENTER**: This  30th  day of October, 2020.

*/s/ Glen Conrad*

Senior United States District Judge