IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL DERRICK EDWARDS, )  | |
|     Plaintiff, ) | CASE NO. 7:19CV00324 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| BARRY KANODE, <u>ET</u> <u>AL.</u>, ) | By:  Hon. Glen E. Conrad |
|     Defendants. ) | Senior United States District Judge |

This civil rights action under 42 U.S.C. § 1983 was filed by Virginia inmate Michael Derrick Edwards proceeding pro se. The court has dismissed or granted summary judgment on all issues except claims 2, 3, and 4, in which Edwards alleges, respectively, that officers used excessive force, committed assault and battery, and maintained him in five-point restraints as punishment and without due process on November 27-28, 2018, at River North Correctional Center ("River North"). Edwards v. Kanode, No. 7:19CV00324, 2020 WL 1158253, at *7 (W.D. Va. Mar. 10, 2020).[1]

The court has considered Edwards' objections to prior orders by the magistrate judge and his motion for reconsideration, ECF No. 153, of her order denying Edwards' motion for sanctions for spoliation of video evidence and noncompliance with discovery orders.[2] Edwards' many, unnecessarily lengthy and repetitive filings on these issues have substantially hampered the court's ability to efficiently address the relatively simple issues at stake. Based on Edwards' evidence and arguments, and the defendants' responses thereto, the court concludes that Edwards' objections

---

[1] The defendants to these remaining claims are correctional officials White, Dean, A. Murray, Jackson, Ayers, Garcia, Robinson, Blevins, J. Murray, Musick, Halsey, Acord, Griffin, Dunning, Bilbrey, Mallory, and Adkins. These defendants have answered Edwards' claims against them and have elected not to file any motion for summary judgment. The parties have invoked their rights to a trial by jury.

[2] The court will address separately Edwards' "partial motion for judgment as a matter of law," ECF No. 214, that Edwards has filed under Rule 50(a)(2) of the Federal Rules of Civil Procedure, and his objection to having that motion construed as a motion for summary judgment, ECF No. 229.

must be overruled, and the motion for reconsideration of the magistrate judge's rulings must be denied.

I. Spoliation.

Early in the case, filed in late April 2019, the magistrate judge issued an order directing the defendant to preserve documentation and video recordings related to Edwards' claims. See ECF No. 12. In November 2019, Edwards filed a motion, ECF No. 81, asserting that he was entitled to sanctions, based on defendants' alleged spoliation of video evidence related to his excessive force claims and their alleged failure to comply with court orders regarding preservation of video related to his claims.[3] Specifically, Edwards first contended that defendants purposefully did not retain and destroyed surveillance camera footage from devices with the closest and clearest view(s) of the use of force incident on November 27, 2018. Second, he asserted that footage from handheld cameras filmed during the time after the incident, when he was confined in five-point restraints, had been altered by being cut short. Third, he contended that the defendants failed to comply with court orders regarding preservation of video footage. The magistrate judge directed the defendants "to provide the additional requested video recordings for [Edwards'] viewing," ECF No. 98, or to respond to the spoliation and sanctions motion.

Defendants responded, arguing that sanctions were not warranted here. They provided affidavit evidence from K. King, the institutional investigator responsible for saving video footage at River North, and from defendants Musick and Miller, the officers who monitored Edwards while he was in five-point restraints. King stated that "[a]ll cameras in the area were checked shortly after the [November 27, 2018] incident to see if there was any footage of the incident to retain. Any footage capturing the incident was saved. If there was footage from any camera that did not

---

[3] The court discusses separately, in Section B below, Edwards' requests for sanctions related to discovery.

show the incident, it was not and has not been saved." Defs.' Resp. King Aff. ¶ 5, ECF No. 106-1. King stated that he himself "pulled, copied and placed on file" a large amount of footage related to this case and denied that any of the retained footage was "cut, censored, or altered in any way." Id. at ¶ 7-8. King explained that some cameras in the yard at River North, despite being closer to the place where the incident occurred, were directed toward other areas and did not record footage capturing the relevant event. Musick and Miller both stated that they viewed the handheld video footage of times when Edwards was offered breaks from the five-point restraints and that they "do not remember anything that occurred that the handheld video records do not capture."[4] Resp. Musick Aff. ¶ 6, ECF No. 106-2; Miller Aff. ¶ 6, ECF No. 103-3.

Edwards responded to defendants' evidence, ECF No. 113. He presented a copy of an incident report prepared near the time of the November 27, 2018, use of force incident, in which the reporting officer stated that the video footage reviewed contained no clear image of the incident, Id. Ex. 2. Edwards also presented copies of affidavits where King, in this case and others, had stated that in 2018, surveillance camera footage which was not retrieved and saved by the investigator would have been automatically recorded over by the camera system after somewhere between 90 and 120 days. Id. at Ex. 1, 3.[5] Edwards also submitted King's affidavit from another case, stating that River North has two kinds of surveillance cameras—Rapid Eye and Max Pro, the latter of which provides the clearest images. Id. at Ex. 1. Edwards asserts that it is unbelievable that officials would not have had a Max Pro camera directed at the high traffic area where the use of force incident at issue in this case occurred. Finally, Edwards asked the court to view the

---

[4] These defendants also state that they did not see anyone, including the camera operator, cut or alter the handheld video recordings.

[5] Specifically, King stated that "Rapid Eye footage is held for approximately 120 days unless it is pulled for a reportable incident or other issue. 120 days is an approximation because depending on how much video is accumulated, downloaded, and/or saved, video recordings may be deleted sooner or later than 120 days after it is recorded." Resp. Ex. 3, ECF No. 113-1.

handheld video footage of the five-point restraints breaks. Although the defendants stated that each of these clips lasted 10-25 minutes, Edwards complained that the clips shown to him lasted only 15-20 seconds. Based on his own impression of the length of the clips he reviewed, Edwards contended that defendants had cut out portions of the handheld footage.

The magistrate judge denied Edwards' spoliation and sanctions motion and related filings in a one-page order, as follows:

> This matter is before the court on the plaintiff's Partial Motion For Spoliation And Failure To Follow Court Order Sanctions, (Docket Item No. 81), and Motion For Evidentiary Hearing Of Camera Footage Pertaining To Plaintiff's Motion For Spoliation And Failure To Follow Court Order, (Docket Item No. 112) (collectively "Motions"), and the defendants' responses. Based on the court's review of the Motions, the defendants' responses and the evidence provided, the Motions are DENIED.

Order, ECF No. 116. Edwards has responded with objections to this order, ECF 123. Among other things, he complains that the magistrate judge did not obtain and review the handheld video clips of the five-point restraint breaks and did not provide any reason for her rulings. Thereafter, Edwards moved for reconsideration of the magistrate judge's order, ECF No. 153. Edwards asks this court to conduct a de novo review of the spoliation and sanctions issues and evidence, to overrule the magistrate judge's order, and to impose spoliation sanctions on defendants.

"Spoliation refers to the destruction or material alteration of evidence or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001). In a federal civil action, spoliation issues are governed by Rule 37(e) of the Federal Rules of Civil Procedure, which states:

> (e) Failure to Preserve Electronically Stored Information. If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

>   (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
>   (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
>>   (A) presume that the lost information was unfavorable to the party;
>>
>>   (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
>>
>>   (C) dismiss the action or enter a default judgment.

Given the plain language of Rule 37(e),

>   [t]he Court must determine that four predicate elements are met under Rule 37(e) before turning to the sub-elements of (e)(1) and (e)(2): (a) the existence of [electronically stored information ("ESI")] of a type that <u>should have been preserved</u>; (b) ESI is <u>lost</u>; (c) the loss results from a party's <u>failure to take reasonable steps</u> to preserve [ESI]; and (d) [the lost ESI] <u>cannot be restored or replaced</u> through additional discovery.  Only if all four of those predicate elements are established can the Court consider sanctions under subsection (e)(1) or subsection (e)(2).

<u>Packrite, LLC v. Graphic Packaging Int'l LLC</u>, No. 1:17CV1019, 2020 WL 7133806, at *3 (M.D.N.C. Dec. 4, 2020).[6]  The movant has the burden of proving the four predicate elements under Rule 37(e).  <u>Id.</u>  "A successful claim for spoliation of ESI cannot be premised on mere speculation on the existence of . . . unrecovered ESI]."  <u>Brittney Gobble Photography, LLC v. Sinclair Broad. Grp., Inc.</u>, No. 18-3403, 2020 WL 1809191, at *5 (D. Md. Apr. 9, 2020).

The court has reviewed, <u>de novo</u>, Edwards' filings (as described herein), and has reviewed the handheld video clips in the record, as follows:

- Nov. 27, 2018, approx. 5:00-5:25 p.m. (RNCC_112718_1408577_1)
- Nov. 27, 2018, approx. 8:51 p.m. (27 sec.) (RNCC_112718_1408577_2)
- Nov. 27, 2018, approx. 10:34-10:45 p.m. (RNCC_112718_1408577_3)
- Nov. 28, 2018, approx. 3:10-3:20 a.m. (RNCC_112718_1408577_4)
- Nov. 28, 2018, approx. 9:00-9:20 a.m. (RNCC_112718_1408577_5)

---

[6] The court has omitted internal quotation marks, alterations, and/or citations throughout this memorandum opinion, unless otherwise noted.

<u>See</u> Resp. and DVD, ECF Nos. 209, 210.  The court finds no basis on which to overrule the magistrate judge's order, ECF No. 116.  The handheld camera video clips in the record cover the lengths of time as indicated in the defendants' documentation.  In fact, Edwards <u>now</u> relies on these same video clips as an <u>accurate</u> depiction of events to support his motion for judgment as a matter of law, ECF No. 214.  Thus, spoliation sanctions are clearly not warranted regarding this evidence.

Even with the benefit of extensive discovery, Edwards also presents no evidence showing that any defendant or prison official purposely failed to retain or destroyed relevant video footage while he or she knew or should have known that any surveillance camera footage, which is now unavailable, was or could be relevant in litigation.  The use of force incident occurred on November 27, 2018; the court received and docketed Edwards' lawsuit on April 22, 2019; and on June 11, 2019, the court issued an order directing defendants to preserve evidence.  The incident report prepared near the time of the incident indicated that no available video provided <u>clear</u> images of the incident, and King as the institutional investigator and custodian of the video footage stated in his affidavit that he retained all footage that captured the incident at all, ECF No. 106-1.

King also states: "Anytime an offender requests video footage to be retained, the request is forwarded to me and I retain it.  Had Offender Edwards timely requested the retention [particular video footage], I would have retained it.  No such request was made." King Suppl. Aff. ¶ 6, ECF No. 200-1.  It is undisputed that any surveillance camera footage not retained by the investigator would have been recorded over by the camera system within 90 to 120 days in the ordinary course of business, before Edwards filed his lawsuit and before the magistrate judge ordered evidence preservation.  More importantly, Edwards' contention—that other cameras must have captured closer and clearer images of the use of force incident and that King purposefully did not preserve

such footage in order to protect his fellow prison officials and to harm Edwards' legal case—is nothing more than speculation, unsupported by facts.[7]

Based on the court's review of the record, the court cannot find that Edwards has met his burden to prove the elements under Rule 37(e)(1) as necessary to his claim that spoliation of relevant video evidence occurred. The court will, therefore, overrule Edwards' objections regarding the magistrate judge's ruling on this issue, ECF No. 123, and deny his motion for reconsideration, ECF No. 153.

## II. Discovery and other Objections.

Edwards has also objected to an order by the magistrate judge, dismissing as moot his motion to compel additional discovery responses, and he has sought sanctions against the defendants for failing to comply with past orders regarding discovery. See ECF Nos. 60, 98, 115, 153. The court has reviewed the discovery record in this case, de novo. Early in the case, the magistrate judge issued an order, ECF No. 12, directing defendants to respond to Edwards'

---

[7] The court notes that Edwards' spoliation contention is clearly distinguishable from the spoliation issue decided after a bench trial in Johns v. Gwinn, No. 7:18-CV-00150, 2020 WL 7138635 (W.D. Va. Nov. 30, 2020) (Moon, J.). In that case, the plaintiff testified that the defendant "sprayed [him] in the face and chest for three to four minutes with oleoresin capsicum ("OC") spray by sticking his arm through a hinged feeding box attached to a tray slot on [p]laintiff's cell door at Red Onion State Prison," while the defendant denied ever doing so. Id. at *1. Two of the defendant's witnesses testified that they reviewed Rapid Eye video footage on the day of the incident and in response to plaintiff's timely grievances; they said it showed the defendant "at plaintiff's cell door with OC spray in hand," but did not show him reaching through the feeding box or dispensing OC spray on the plaintiff. Id. at *8. Based on the alleged belief that the video did not support the plaintiff's claim, these officers did not have the footage retained, and the video system recorded over it. Id. Following a bench trial, the court held that spoliation had occurred, because prison officials knew or should have known that the footage they reviewed would have both partially supported and contradicted plaintiff's testimony, that it was, therefore, relevant to foreseeable litigation about the incident, and that they failed to take reasonable steps to preserve it. Id. at *7-10. The court also held that sanctions should be imposed against the defendant "to remedy harm to [p]laintiff caused by any failings" by the officers, given the prison's special relationship to its inmates. Id. at *8.

In the instant case, other than Edwards' rank speculation about prison camera views, which is not based on personal knowledge, no evidence indicates that other cameras in the yard captured the incident at issue. On the other hand, defendants' evidence is that King retained all video footage from the cameras that captured the incident in the yard. Moreover, as noted in Johns, the "duty to preserve" relevant ESI requires only reasonable measures and is "not meant to impose an unreasonable burden on parties anticipating litigation; they need not preserve every shred of paper, every e-mail or electronic document, and every backup tape." Johns, 2020 WL 7138635, at *9. At this stage of the proceedings, the court is unable to find that video evidence was lost or destroyed, or that correctional officials failed to take reasonable steps to preserve relevant evidence.

discovery motions . . . "within 30 days of the date of filing of the defendant's responsive pleading to the Complaint." She then granted defendants' motion for an extension of time until August 26, 2019, for submission of their responsive pleading, which they timely filed on that date. Less than thirty days later, on September 23, 2019, defendants responded to Edwards' discovery requests by producing the requested documents or lodging objections to his requests. Edwards filed a motion to compel that he later amended, ECF Nos. 60 and 84, arguing that (a) defendants had filed their responses late and thus waived objections; and (b) the additional items to be produced were relevant to his claims, to bolster his version of events in contrast to defendants' account.[8]

The court finds from the record that defendants filed their discovery responses within the timeline set by the magistrate judge's orders and thus did not waive their right to object to his discovery requests. Moreover, defendants' responses to the motion to compel, ECF Nos. 67 and 106, explained that while prison officials did not show Edwards the retained video footage as soon as counsel expected, this oversight was quickly corrected. It is undisputed that Edwards has now viewed all retained video footage of the incident and its aftermath on November 27-28, 2018. In addition, the magistrate judge has directed defendants to submit to the court, under seal, the following policies that Edwards had requested: Operating Procedure 135.1, Operating Procedure 420.2, and Operation Procedure 435.3. These policies are not available for inmates to possess, but copies of them are now in the record for court review for Edwards' possible use at trial. See ECF Nos. 192, 195.

After review of the motion to compel as amended and Edwards' objections to the magistrate judge's termination of that motion, see ECF Nos. 84, 115 and 116, and in light of

---

[8] Edwards' motion to compel as amended (ECF Nos. 60, 85) also complained about defendants' alleged destruction of video footage of the use of force incident, a subject that the court has already addressed herein.

materials already in the record, the court cannot find that Edwards is entitled to the additional materials he sought to compel.[9] The materials he desired (1) are not both "relevant to any party's claim or defense and proportional to the needs of the case," and (2) "the burden or expense of the proposed discovery outweighs its likely benefit" to Edwards in providing meaningful support for his excessive force claims or his due process claims related to the use of five-point restraints. Fed. R. Civ. P. 26(b)(1) (emphasis added). Therefore, the court will overrule Edwards' objections, ECF No. 115, and deny his motion for reconsideration regarding sanctions related to defendants' discovery responses, ECF No. 153.

Edwards has also filed objections to the magistrate judge's orders denying his many motions for appointment of counsel. The court agrees with the magistrate judge's assessment, however, that Edwards has not demonstrated a need for counsel at the current stage of the litigation. Acting pro se, he has engaged in extensive discovery, pursued a detailed spoliation argument, and filed responses to all defendants' dispositive motions. Once the court has had an opportunity to address Edwards' pending "motion for judgment as a matter of law," ECF No. 214, the legal claims remaining before the court will be set for a jury trial. Edwards may renew his motion for counsel at that time.

### III. Conclusion.

For the reasons stated, the court concludes that Edwards' objections to prior orders by the magistrate judge regarding discovery, spoliation, and the appointment of counsel must be

---

[9] Edwards' motion to compel, ECF No. 60, sought the following types of additional documentation in response to certain of his numbered discovery requests for production from ECF Nos. 10 and 18: grievances and documentation from River North, Red Onion State Prison, and the Virginia Department of Corrections about mistreatment of prisoners and staff misconduct by defendants in this case, investigative files, and responses thereto (Request 11); and policies and directives to staff about Operating Procedures 135.1, use of force; 135.2, staff relationships with inmates; 420.2, use of restraints and management of inmate behavior; 030.4, special investigations unit; 701.3, health records; 030.1, offender records management; and 025.3, public records retention and disposition (Requests Nos. 12-13, 15-18). Moreover, Edwards has failed to submit a copy of defendants' responses to these discovery requests.

overruled, and his motion to reconsider, ECF No. 153, must be denied.  An appropriate order will issue herewith.

The clerk will send a copy of this memorandum opinion and the accompanying order to Edwards and to counsel of record for defendants.

**ENTER**:  This   31st day of March, 2021.

_____
Senior United States District Judge