IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MICHAEL DERRICK EDWARDS, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:19-cv-00324 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| BARRY KANODE, *et al.*, | ) | By: Hon. Thomas T. Cullen |
| | ) | United States District Judge |
| Defendants. | ) | |

In an effort to subdue an altercation between Plaintiff Michael Derrick Edwards and prison staff at River North Correctional Center, officers responded with force and deployed a canine on Plaintiff, causing him to be bitten in several places. Plaintiff sustained cuts, bruises, and puncture wounds from the dog's bite. This lawsuit concerns the officers' response, as well as the medical attention (or, as Plaintiff alleges, a lack thereof) that he received after the incident. This matter is before the court on motions for summary judgment filed by two medical personnel—Lisa Parks, RN, and Deborah Ball, NP. Because the court has previously held that factual questions reserved for the jury preclude summary judgment for either Parks or Ball, both motions will be denied.

**I.**

The facts of this case are adequately recounted in the court's prior memorandum opinions (*see* Mem. Op., Oct. 30, 2020 [ECF No. 215]; Mem. Op., Oct. 30, 2020 [ECF No. 217]) and need not be recounted in great detail here. Briefly, though, on November 27, 2018, following an altercation with correctional officers, a canine was deployed on Plaintiff, biting

him in several places. For purposes of the present motion, the allegations Plaintiff levies against the correctional officers are irrelevant.

What is relevant is the decision, while he was in medical surveillance, to place him in "five-point" restraints[1] with open wounds on his back. The medical evidence is clear—and undisputed—that Plaintiff had an abrasion and at least two lacerations on his back when the restraints were applied.[2] Although the wound was cleaned on doctor's orders, it was not bandaged. Consistent with prison policy, Defendant Lisa Parks, RN, approved the implementation of 5-point restraints on Plaintiff. Plaintiff contends her approval amounted to deliberate indifference to a serious medical need, in violation of the Eighth Amendment.

Following the altercation and initial treatment, Plaintiff was transferred to Red Onion State Prison. When he arrived, he was seen by Defendant Deborah Ball, NP. Plaintiff alleges (in his verified pleadings and in a declaration attached to his response in opposition to Ball's motion for summary judgment) that he complained to Ball about "pain throughout his whole body, to both hands and wrists, to both eyes," and that he could not see out of his left eye because it was swollen shut. (Decl. of Michael Edwards ¶ 5, Feb. 20, 2020 [ECF No. 131-1].) He alleges that Ball told him to wait "for a month or two" for the pain to go away and refused to prescribe him any pain medication. Plaintiff alleges that Ball ignored his repeated complaints of pain and numbness, forgoing any treatment for nearly four months. When he was seen by

[1] It is undisputed that "five-point" restraints involve strapping an inmate to a bed with cuffs on both wrists, both ankles, and a strap across his chest. *See, e.g.*, *Davis v. Lester*, 156 F. Supp. 2d 588, 591 (W.D. Va. 2001) (describing "5-point" restraints).

[2] Medical personnel contend that the lacerations "were not open wounds." (*See, e.g.*, Decl. of James Stevens, M.D. ¶ 35, June 11, 2021 [ECF No. 253-2].)

the regional physician in March 2019, he was prescribed pain medication. (*See* ECF No. 131-2.)

Plaintiff, proceeding *pro se*, filed a complaint in this court on April 22, 2019, and he filed an amended complaint on October 16, 2019. (*See* ECF Nos. 1, 54.) A second amended complaint was docketed on March 2, 2020. (ECF No. 126.) Defendant Ball filed a motion for summary judgment on January 10, 2020. (ECF No. 108.) On May 19, 2020, Plaintiff was permitted to make a small amendment to change the name of a party within his pleading, resulting in, for all intents and purposes, a third amended complaint. (*See* Order, May 19, 2020 [ECF No. 165].) Defendant Parks filed a motion to dismiss on July 14, 2020 (ECF No. 182), and she filed a motion for summary judgment one week later, on July 21 (ECF No. 186). The Honorable Glen E. Conrad, then-Senior United States District Judge, denied those motions on October 30, 2020. (*See* Order, Oct. 30, 2020 [ECF No. 216]; Order, Oct. 30, 2020 [ECF No. 218].)

On August 10, 2021, Defendant Ball filed a second motion for summary judgment. (ECF No. 244). Defendant Parks filed a second motion for summary judgment on September 14, 2021. (ECF No. 252.) This case was transferred to the undersigned on January 13, 2022 (ECF No. 275), and the motions for summary judgment are ripe for review.

**II.**

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude

the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

**III.**

Plaintiff makes Eighth Amendment claims—actionable through 42 U.S.C. § 1983—against both Parks and Ball. Plaintiff contends Parks was deliberately indifferent to his serious medical needs when she approved the use of five-point restraints on him while he had wounds

on his back. Plaintiff alleges that Ball was deliberately indifferent to his serious medical needs by delaying and/or denying treatment for pain and numbness where the canine bit him for months after the incident.

**A.**

To establish a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must put forth facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is "deliberately indifferent" only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (U.S. 1994). A claim concerning a mere disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). In fact, "many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). An "error of judgment" on the part of prison medical staff or "inadvertent failure to provide adequate medical care," while perhaps sufficient to support an action for malpractice, does not constitute a constitutional deprivation redressable under § 1983. *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989). Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm

exists *and* must draw the inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998); *see also Farmer*, 511 U.S. at 837. The prison official's conduct must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness. *Militier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

Intentional delay of (or interference with) medical treatment can also amount to deliberate indifference. *See Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). But Fourth Circuit has held that there is "no Eighth Amendment violation unless 'the delay results in some substantial harm to the patient,' such as a 'marked' exacerbation of the prisoner's medical condition or 'frequent complaints of severe pain.'" *Formica*, 739 F. App'x at 755 (citing *Webb v. Hamidullah*, 281 F. App'x 159, 166–67 (4th Cir. 2008)); *see also Sharpe v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." (cleaned up)). Substantial harm may also be "'a lifelong handicap or permanent loss.'" *Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting *Monmouth Co. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Id.* at 758 (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)) (emphasis added).

**B.**

As it relates to Nurse Parks, the court previously considered—and denied—summary judgment on Plaintiff's claims against Parks. In October 2020, the court held:

> Drawing all reasonable inferences from the evidence in Edwards' favor, the court concludes that he may be able to show that RN

> Parks acted with deliberate indifference to a serious medical need in failing to object, for medical reasons, to the nature of Edwards' placement in restraints. Specifically, Edwards may be able to persuade a jury that RN Parks must have known from obvious facts that restraining Edwards, naked on the table with open wounds on his back, created an excessive risk of serious harm—both pain and the risk of infection—from exposure of the wound to the table's surface during the lengthy restraint period. The court also concludes that Edwards may be able to prove that, contrary to RN Parks' conclusory denial, she did have authority . . . to protest, for medical reasons, the restraint of Edwards in this manner.

(Mem. Op. pg. 6, Oct. 30, 2020 [ECF No. 215].) Parks does not address or even acknowledge the court's prior findings in her supporting brief. (*See* ECF No. 253.) To his credit, Plaintiff asked the court to take judicial notice of Judge Conrad's prior opinion in this case. (*See* ECF No. 268.)

The court's prior reasoning is still controlling. Plaintiff alleges that he had open wounds on his back and was forced to lay naked on a table in restraints, and Parks admits that she "was the nurse . . . who . . . verified placement of Plaintiff's five-point restraints as being appropriate." (Decl. of Lisa Parks ¶ 12, June 17, 2021 [ECF No. 253-1].) A jury could reasonably conclude that the wounds on Plaintiff's back constituted a serious medical condition and that permitting Plaintiff to lay, restrained, on those unbandaged wounds (even if they remained unbandaged on doctor's orders) constituted deliberate indifference. *See Formica*, 739 F. App'x at 755 (noting that a medical condition is "objectively serious when it 'would result in further significant injury or unnecessary and wanton infliction of pain if not treated'" (quoting *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010)); *Farmer*, 511 U.S. at 837 (holding that an official is deliberately indifferent to an inmate's serious medical needs when she subjectively "knows of and disregards an excessive risk to inmate health or safety").

Because Parks has not brought forth any evidence the justify reversing this court's prior judgment, her motion for summary judgment will be denied.

**C.**

The same must be true of Ball's second motion for summary judgment. In its prior opinion, the court held that "that the evidence in the record as to the injuries and symptoms Edwards exhibited at Red Onion presents issues of fact for trial regarding the objective portion of the constitutional standard." (Mem. Op. pg. 6, Oct. 30, 2020 [ECF No. 217].) Like Parks, Ball does not acknowledge, let alone address, the court's prior ruling. (*See* ECF No. 245.) Plaintiff asked the court to take judicial notice of this opinion as well. (*See* ECF No. 263.)

As the court held:

> [I]t is undisputed that after the altercation on November 27, 2018, nurses and a doctor at River North determined that Edwards' injuries warranted medical treatment there, in addition to follow-up care at Red Onion. *Jackson*, 775 F.3d at 178. Moreover, Edwards describes his complaints of Pain to NP Ball. *Formica*, 739 F. App'x at 755.
>
> The court also concludes that on the current record, Edwards' evidence about NP Ball's treatment decisions and notes about the November 29, 2018, examination and thereafter, taken in the light most favorable to him, present material disputes of fact for trial on deliberate indifference. Clearly, NP Ball did not ignore Edwards' injuries that day. She performed and documented a thorough assessment of his condition and ordered X-rays of his hand and face to assist in determining future treatment needs. However, despite Edwards' reports of widespread pain, NP Ball did not prescribe pain medication or other pain-relieving treatments. She also did not refer Edwards to the prison physician, an optometrist, or a neurologist regarding his pain, his obviously injured eyes, and his reports of numbness. According to Edwards, NP Ball merely advised Edwards to give these conditions time to resolve.
>
> . . .
>
> [When NP Ball saw Plaintiff again on February 14, 2019, she] referred him to the optometrist, but she did not provide

> treatment expressly designated to address his pain or numbness. . . . Edwards saw the regional physician, Dr. Fox, on March 20, 2019. Dr. Fox diagnosed Edwards' subjective hand complaints as chronic hand pain from dog bites received in November 2018 and, over the next several weeks, the doctor prescribed various pain medications for Edwards to try to address the issue.
>
> Based on this evidence, the court finds disputes of fact on which Edwards may be able to persuade a jury that NP Ball knew that Edwards was suffering, and would continue to suffer, pain and possibly other visual or neurological effects because of her actions or inactions on November 29, 2018, and in the days and weeks thereafter. He may be able to show that NP Ball knew the care she provided at that first exam was inadequate to address some of his immediate and serious medical needs. *De'lonta*, 708 F.3d at 526. Moreover, Edwards may be able to show that he suffered prolonged, serious medical conditions because of NP Ball's decisions to delay treatment for pain, referral to the prison physician, and referral to specialists for treatment of his eyes and numbness. "[D]elaying access to medical care" may constitute deliberate indifference. *See Smith v. Smith*, 589 F.3d 736, 739 (4th Cir. 2009) (citing *Estelle*, 429 U.S. at 104–05). In such cases, in addition to establishing that his medical need was objectively serious, a plaintiff must usually show that the delay in providing medical care caused him to suffer "substantial harm." *See, e.g., Webb v. Hamidullah*, 281 F. App'x. 159, 166 (4th Cir. 2008); *Shabazz v. Prison Health Servs., Inc.*, No. 3:10CV190, 2012 WL 442270, at *5 (E.D. Va. Feb. 9, 2012). "The substantial harm requirement may be satisfied by lifelong handicap, permanent loss, or considerable pain." *Shabazz*, 2012 WL 442270, at *5 (citing other cases). Finding material factual disputes as to the alleged delays in treatment, based on the current record, the court will deny NP Ball's motion for summary judgment.

(*Id.* at 6–7 (footnote omitted).)

Like Parks, Ball fails to offer any compelling evidence to warrant setting aside the court's prior judgment. Although she repeats, throughout her briefings, that questions of medical judgment are not subject to judicial review, *see Russell*, 528 F.2d at 319 ("Questions of medical judgment are not subject to judicial review."), this general proposition does nothing to address the court's prior, well-reasoned conclusion that four months without treatment for

repeated complaints of pain may constitute deliberate indifference.[3] *See Formica*, 739 F. App'x at 755 (noting that "frequent complaints of severe pain" may suffice to show substantial harm to the inmate); *Sharpe*, 621 F. App'x at 734 ("A delay in treatment may constitute deliberate indifference if the delay . . . unnecessarily prolonged an inmate's pain." (cleaned up)). Defendant Ball's motion for summary judgment will be denied.

**IV.**

For the reasons stated above (and in the court's prior opinions), the issues surrounding Nurse Parks' and Nurse Practitioner Ball's treatment of Plaintiff are questions of fact that are not appropriate for summary judgment. Their respective motions will be denied.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 14th day of March, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

[3] NP Ball does contend that, as a result of Plaintiff's professed allergies to non-steroidal anti-inflammatory drugs ("NSAIDs") and other factors, there were no pain medications she could prescribe Plaintiff except narcotics, and that "narcotics are not ordered in the correctional setting for acute injuries like the ones Plaintiff presented with on November 29, 2018." (Ball's Mem. in Supp. pg. 30, Aug. 10, 2021 [ECF No. 245].) Perhaps a jury will accept that argument, but it is no defense at this stage to say that Ball refused to exercise her medical judgment because it was against prison policy. Likewise, the prison policy prohibiting the issuance of narcotics for acute injuries is not and cannot be an impenetrable shield against liability under the Eighth Amendment. *See Bowring v. Godwin*, 551 F.2d 44, 47 (4th Cir. 1977) ("Federal courts, though reluctant to intervene in the daily operation of penal institutions, have required those institutions to provide adequate food, clothing and shelter for their charges. Additionally . . . , they have required the provision of reasonable medical care, as needed.").